Matter of Uncle Sam Garages, LLC v Capital Dist. Transp. Auth. (2019 NY Slip Op 02592)





Matter of Uncle Sam Garages, LLC v Capital Dist. Transp. Auth.


2019 NY Slip Op 02592


Decided on April 4, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 4, 2019

526382

[*1]In the Matter of UNCLE SAM GARAGES, LLC, Petitioner,
v
CAPITAL DISTRICT TRANSPORTATION AUTHORITY et al., Respondents.

Calendar Date: February 13, 2019

Before: Garry, P.J., Egan Jr., Lynch, Devine and Rumsey, JJ.


E. Stewart Jones Hacker Murphy, LLP, Troy (Patrick L. Seely Jr. of counsel), for petitioner.
Hite & Beaumont, PC, Albany (John H. Beaumont of counsel), for respondents.



MEMORANDUM AND JUDGMENT
Devine, J.
Proceeding initiated in this Court pursuant to EDPL 207 to review an amended determination of respondents condemning a portion of petitioner's property for the purpose of constructing a transit center facility.
Petitioner is the owner of real property in the City of Troy, Rensselaer County that abuts several public streets and contains a parking garage with attached retail space and an adjoining alleyway. Respondent Capital District Transportation Authority (hereinafter CDTA) sought to acquire interests in the parcel sufficient to construct a transit center next to the parking garage and facilitate the staging and movement of the public buses that would stop there. Negotiations to purchase or lease the necessary interests foundered and, as is relevant here, respondent Board of Directors of CDTA (hereinafter the Board) issued an amended determination that acquired them by eminent domain (see Public Authorities Law § 1307). Petitioner commenced the instant proceeding to challenge the amended determination.
In reviewing the amended determination, we may only review "whether the proceeding was constitutional, whether the acquisition was within the condemnor's statutory authority, whether the determination was made in accordance with the statutory procedures and whether a public use, benefit or purpose will be served by the proposed acquisition" (Matter of Broadway Schenectady Entertainment v County of Schenectady, 288 AD2d 672, 672-673 [2001]; see EDPL 207 [C]; Matter of Johnson v Town of Caroga, 162 AD3d 1353, 1354 [2018]). As the party challenging the condemnation, petitioner bears the burden of showing "that the [amended] determination was without foundation and baseless, or that it was violative of any of the applicable statutory criteria" (Matter of Broadway Schenectady Entertainment v County of Schenectady, 288 AD2d at 673 [internal citation omitted]; see Matter of Johnson v Town of Caroga, 162 AD3d at 1354). Petitioner does not attack the contents of the amended [*2]determination, but instead argues that fatal defects in the review conducted under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) and in the public hearing process warrant its annulment.
In order "to ensure that an appropriate public purpose underlies any condemnation" as demanded by the EDPL, "a condemnor is required to hold a public hearing before it may approve the acquisition" (Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540, 546 [2006]; see EDPL 201). CDTA did so, and the hearing transcript and written submissions reveal that attendees, including petitioner's principal, were given the requisite outline of "the purpose, proposed location or alternate locations of the public project and any other information [CDTA] consider[ed] pertinent, including maps and property descriptions of the property to be acquired and adjacent parcels" (EDPL 203; see Matter of Richards v Tompkins County, 82 AD3d 1323, 1326 [2011]). Thereafter, attendees had "a reasonable opportunity to present an oral or written statement and to submit other documents concerning" the project (EDPL 203). This is all that EDPL 203 explicitly demands.
Petitioner nevertheless suggests that the Board defeated the purpose of requiring a public hearing by ignoring the information collected at it. Initially, although the hearing set the stage for the Board to " make its determination and findings concerning the proposed public project," it was not itself a meeting where the Board deliberated or otherwise attempted to wield its power, and we therefore reject petitioner's assertion that a quorum of the Board was required to attend it (EDPL 204 [A]; see General Construction Law § 41; Public Authorities Law § 1303 [4]; Matter of Taub v Pirnie, 3 NY2d 188, 193-195 [1957]; Matter of City of Gloversville v Town of Johnstown, 210 AD2d 760, 761 [1994]; Matter of Laverne v Sobol, 149 AD2d 758, 761 [1989], lv denied 74 NY2d 610 [1989]; see also Comm on Open Govt OML-AO-2900 [1998]). Moreover, respondents appropriately submitted an affidavit from an individual with personal knowledge and accompanying documentation to refute petitioner's allegation that the Board was unaware of what transpired at the public hearing before adopting the amended determination (see CPLR 409 [b]; EDPL 207 [B]; Matter of Thornton v Edwards-Knox Cent. Sch. Dist. Bd. of Educ., 105 AD3d 1206, 1208 [2013]; compare Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency, 301 AD2d 292, 305 [2002] [court refused to consider a newspaper article that was not before the agency], lv denied 99 NY2d 508 [2003]). Petitioner has accordingly failed to show, as required, that the Board "made no independent appraisal and reached no independent conclusion" of the information gathered at the public hearing (Matter of Kilgus v Board of Estimate of City of N.Y., 308 NY 620, 628 [1955]; accord Matter of Taub v Pirnie, 3 NY2d at 194).
Turning to the Board's SEQRA determination, the transit center project involves replacing existing sidewalks and pavement without expanding their extent, limited work inside the parking garage and the construction of a "nonresidential structure or facility involving less than 4,000 square feet of gross floor area" that will comply with zoning and land use regulations (6 NYCRR [former 617.5 (c) (7)]; see 6 NYCRR [former 617.5 (c) (2)]). In light of these facts, the determination that the project "was a Type II action under SEQRA that presumptively did not have a significant impact upon the environment and did not require the preparation and circulation of an environmental impact statement, was not irrational, arbitrary or capricious, affected by error of law, or an abuse of discretion" (Incorporated Vil. of Munsey Park v Manhasset-Lakeville Water Dist., 150 AD3d 969, 971 [2017]; see 6 NYCRR 617.6 [a] [1] [i]; Matter of Village of Hudson Falls v New York State Dept. of Envtl. Conservation, 158 AD2d 24, 30 [1990], affd for reasons stated below 77 NY2d 983 [1991]; Matter of McNerney v Bainbridge-Guilford Cent. School Bd. of Educ., 155 AD2d 842, 843 [1989]).
Petitioner's contentions, to the extent not already addressed, have been examined and afford no basis for setting aside the amended determination.
Garry, P.J., Egan Jr., Lynch and Rumsey, JJ., concur.
ADJUDGED that the amended determination is confirmed, without costs, and petition dismissed.